REQUESTED BY: Marilyn J. Hasselbalch, Director Nebraska Real Estate Appraiser Board
You have advised that the Board is contemplating giving an out-of-state appraisal "broker" the responsibility for managing the appraisal review which is a part of the Board's licensing function. The broker would receive appraisal reports prepared by each applicant for licensure or certification, accompanied by the applicant's appraisal review fee. The broker would then arrange for a Nebraska appraiser to critique the reports, for which critique the broker would relay to the appraisal reviewer approximately two-thirds of the appraisal review fee. The broker would retain the balance. The broker would collect the critique and appraisal reports following the completion of the reviews and then examine the review appraiser's work product for quality assurance purposes. The critique and appraisal reports would then be transmitted to the Board.
According to your letter, the broker would not be under contract with the Board.
You have asked the following questions:
 1. Is it lawful for the Board to make arrangements with an out-of-state appraisal broker to manage one phase of the application process?
 2. Is it lawful for the Board to make arrangements with an appraisal broker not under contract with the Board, to participate in a phase of the application approval process?
 3. Is it lawful for an applicant to pay a broker, instead of paying the Board, for any step of the application process?
 4. Must an appraisal broker arrangement go out for bid when the broker is not under contract and not paid by the Board?
 5. Is it lawful to give responsibility over some of the parts of the application process to a broker who is not being paid by the Board?
The Real Estate Appraiser Board is responsible for administering and enforcing the Real Estate Appraiser Act. Neb. Rev. Stat. § 76-2223
(2003). This includes the licensing, or credentialing, of applicants who have met the requisite education and experience requirements. Whether a particular applicant has the requisite experience is, at least in part, determined by subjecting the applicant's appraisal reports to review. See Neb. Rev. Stat. §§ 76-2230(1)(d), 76-2231.01(1)(d), 76-2232(1)(d) and 298 NAC 5.006 (Candidates for licensure must submit three appraisal reports for review. Candidates for residential certification must submit three residential appraisal reports, including one to four residential properties, one residential 0 to 20 years, and one 20-year or older residential. Candidates for general certification must submit three appraisal reports on income producing properties, two of which include all three approaches to value.)
The Board establishes the fee for review of reports, which are to relate to the costs involved and not exceed $200 in the case of applicants for licensure, $250 for applicants for residential certification, and $300 for applicants for general certification. 298 NAC 1.001.02. You advise that the Board anticipates increasing these fees to encourage participation by more reviewers in order to deal with an expected influx of new applications.
Our concerns with your proposal do not have so much to do with the residency of the broker or the fact that the Board is involving private persons/consultants in the application process. The Board has been authorized to do all things necessary to carry out the Real Estate Appraiser Act. Neb. Rev. Stat. § 76-2223 (2003). Neb. Rev. Stat. § 76-2224
specifically authorizes the Board to contract for administrative assistance, including personnel that are required by the Board to carry out its responsibilities. Where the broker does not make the licensing decision and primarily engages in ministerial and quality control functions, it is doubtful that issues of "improper delegation" would prove insurmountable. Our concerns stem more from the informality of the "arrangement" and the proposed handling of the fees for the review services.
Although you have said that the broker would not be under contract with the Board or receive payment from the Board, there may still be a "contract," even though it has not been set down in writing. The lack of formality, though, is troublesome. Without a formalized agreement, the perception may be that the Board has abandoned its role, not merely delegated it. As noted above, the Board is authorized to contract for administrative services, not to direct applicants to some independent "preferred provider" who will do the Board's work.
Having the applicant pay the Appraisal Broker directly appears inconsistent with some of the Act's provisions. Neb. Rev. Stat. §76-2223(5) (2003), permits the Board to collect all fees required or permitted by the Act, for remission to the State Treasurer for credit to the Real Estate Appraiser Fund. Similarly, Neb. Rev. Stat. § 76-2241(2), provides that all fees and other revenue collected pursuant to the Real Estate Appraiser Act shall be remitted by the Board to the State Treasurer for credit to the Real Estate Appraiser Fund. Although Neb. Rev. Stat. § 76-2241(2) expressly permits the Board to direct applicants to pay the examination fee to a third party who has contracted with the Board to administer the test, no such statutory allowance has been made for appraisal broker or appraisal review fees. One might respond that the absence of such allowance does not have much significance because appraisal broker fees are not specifically mentioned in the Real Estate Appraiser Act. Such response, though, would lead one to question where the Board gets the authority to require review appraisal fees. This office's approval of the regulations which provided for appraisal review fees as part of the application process was most likely rooted in a sentence within section 76-2241(2) which provides that the Board may establish such fees as it deems appropriate for special examinations and other services provided by the Board. The Act appears to contemplate that the Board is to provide the services for which additional fees are imposed, but here the arrangement envisioned is so informal and the Board's participation so slight as might prevent it from being considered the service provider. Its authority to impose fees for the mandatory appraisal reviews would thereby be rendered suspect.
The arrangement has the earmarks of a state contract for services, which may subject it to the provisions of Neb. Rev. Stat. §§ 73-501 thru73-509 (2003). This may require review of the agreement by the Department of Administrative Services and competitive bidding. At a minimum, entry of the agreement into the state accounting system would be required and its duration would need to be specified. Neb. Rev. Stat. §§ 73-503 and73-506 (2) (2003). Please note, too, that Neb. Rev. Stat. § 73-506 (3) (2003), prohibits state agencies from structuring contracts for services to avoid the requirements of sections 73-501 to 73-509.
The bidding and pre-review requirements turn upon the dollar amount of the contract. This information has not been given in your letter but you have provided a history of the number of applications received in prior years. Based upon those numbers, your estimate that the broker would keep one-third of the fee, and the current fees for appraisal reviews set forth in 298 NAC 6.001.02, pre-review and competitive bidding requirements probably would not apply. However, this conclusion is partly based upon the fact that the arrangement apparently has no set duration. Until the duration is set and the increased fees determined, one cannot say whether the bidding requirements will be triggered. Even then it may be difficult, since the fees hinge upon the number of applicants and the type of application. It is suggested that you seek guidance on this issue from the Materiel Division of the Department of Administrative Services as matters progress.
To summarize, the Board may arrange for an out-of-state appraisal broker to coordinate the appraisal review aspect of the licensure process. However, such arrangement should be formalized in order to comply with the requirements of Nebraska law regarding state contracts for services and to make clear that the broker is acting for the Board. Review appraisal fees should be paid to the Board, not to the appraisal broker directly. It is unlikely that the total value of the contract will be so great as to require competitive bidding, but until the variables such as the contract's duration are known, no definite answer can be given.
Sincerely,
 JON BRUNING Attorney General
 Mark D. Starr Assistant Attorney General
Approved by:
____________________________ Attorney General